**PACESETTER CORPORATION and Liberty Mutual Insurance Company, Petitioners and Cross–Respondents,**

v.

**Brian COLLETT, Respondent and Cross–Petitioner,**

and

**The Industrial Claim Appeals Office of the State of Colorado, Respondent.**

**No. 00CA2099.**

Colorado Court of Appeals, Div. V.

May 10, 2001.

Certiorari Denied Nov. 13, 2001.

Law Offices of Jonathan S. Robbins, Jonathan S. Robbins, Denver, CO, for Petitioners and Cross–Respondents.

Thomas D. Hacker, Denver, CO, for Respondent and Cross–Petitioner.

No Appearance for Respondent.

Opinion by Judge TAUBMAN.

In this workers' compensation proceeding, Brian Collett (claimant) seeks review of the final order of the Industrial Claim Appeals Office (Panel) determining that his injury is not compensable and denying his claim in part. Pacesetter Corporation and its insurer, Liberty Mutual Insurance Company (collectively employer), also seek review of that part of the Panel's order awarding partial medical and temporary disability benefits based upon a prior admission of liability. We affirm.

Employer hired claimant to sell its various home improvement products. He was severely injured in a one-car automobile accident while he was on a selling trip in Lar-

amie, Wyoming. It is undisputed that claimant was intoxicated at the time of the accident.

The primary issues at the evidentiary hearing before the Administrative Law Judge (ALJ) concerned whether a general admission of liability had been filed by employer, whether the admission required employer to pay any benefits, and whether claimant was engaged in a personal deviation at the time of the accident such that his injuries did not occur within the course and scope of his employment. The ALJ determined that claimant had engaged in a substantial personal deviation that had not ended prior to the accident. Concluding, therefore, that claimant failed to meet his burden of proving that the injuries he sustained were compensable, the ALJ dismissed and denied his claim.

On review, the Panel concluded that the general admission of liability had been improvidently filed and could be retracted. However, it further determined that such retraction could only have prospective effect. The Panel also held that the ALJ had reasonably inferred from the evidence that the accident occurred while claimant was engaged in a personal deviation and, accordingly, denied prospective benefits on the ground that the injuries sustained were not compensable. However, giving the general admission only retroactive effect, the Panel entered a limited award of benefits for the period preceding the hearing.

## I.

■ Claimant first contends that the Panel erred in determining that employer's general admission of liability was improvidently filed and could be withdrawn. Employer contends that the Panel erred in determining the general admission could only be withdrawn as of the date of the hearing. We address these contentions together and reject them both.

Pursuant to § 8–43–203(1)(a), C.R.S.2000, an employer must provide notice that liability is admitted or contested within 20 days of the date it becomes aware of a disabling injury. Once an admission of liability has been filed,

the employer may not unilaterally withdraw it, but rather must continue to make payments consistent with the admitted liability until the ALJ enters an order allowing revocation in full or in part. Section 8–43–203(2)(d), C.R.S.2000; *HLJ Management Group, Inc. v. Kim*, 804 P.2d 250 (Colo.App. 1990).

Here, employer sent claimant a general admission of liability on March 29, 1999. The form indicated that a copy had also been sent to the division of workers' compensation on that same date. Claimant testified that he received the general admission and that he also received a letter from employer dated April 1, 1999, informing him that the general admission was filed and sent to him in error and that it was being withdrawn. Both parties acknowledge that the division file does not contain a copy of the admission.

■ Claimant maintains that employer remained bound by the admission it filed on March 29, 1999, and was prevented from contesting compensability absent a showing of why that admission was improvidently filed. However, pursuant to *HLJ Management Group, Inc. v. Kim, supra,* whenever an admission of liability is contested by either party, the matter placed in issue is subject to determination by the ALJ at an adversary hearing, and the admission remains binding only until an order resolving the controversy is entered. Further, as the Panel noted, it is well established that the claimant must prove the existence of a compensable injury. Section 8–41–301(1)(b), C.R.S.2000; *Faulkner v. Industrial Claim Appeals Office,* 12 P.3d 844 (Colo.App.2000). Consequently, we agree with the Panel that employer did not have to show why its admission was improvidently filed in order to contest liability, and we reject claimant's assertion that, without such a showing, the admission had conclusive and binding effect.

Moreover, contrary to employer's representation, the record shows that the effectiveness of both the general admission and employer's letter revoking it were addressed at the hearing before the ALJ. We therefore are satisfied that this issue was sufficiently raised to preserve it for our review. *See Sneath v. Express Messenger Service,* 931

P.2d 565 (Colo.App.1996)(a party does not need to identify an issue in explicit terms to preserve it, when analogous arguments have been made).

Notwithstanding our holding that withdrawal of the admission did not depend upon a showing of improvidence or error, we also conclude that the Panel did not err in permitting the admission to be withdrawn only from the date of the hearing. Employer complains that the general admission was never actually "filed" because the division never received its copy. However, the Panel relied upon decisions in which the employer was deemed to have substantially complied with the requirements of § 8–43–203, C.R.S.2000, even though no written admission or denial was ever filed. *See Dorris v. Gardner Zemke Co.,* 765 P.2d 602 (Colo.App.1988)(substantial compliance where the admission of liability was filed with the division and benefits were paid, but the claimant did not receive a copy); *Hanson v. Industrial Commission,* 716 P.2d 477 (Colo. App.1986)(oral admission of liability at hearing constituted sufficient compliance).

The Panel also observed that employer did not deny ever mailing the admission to the division. Thus, the Panel reasoned that no rational basis existed upon which employer should benefit from the fortuitous circumstance that its otherwise proper admission had failed to reach the division's file. We agree with the Panel and conclude that the cases upon which it relied are not distinguishable simply because the context in which substantial compliance was found involved the avoidance of penalties. Here, as in those cases, the statutory objectives of protecting the employee and notifying him of the legal ramifications associated with a claim were fulfilled. *See Smith v. Myron Stratton Home,* 676 P.2d 1196 (Colo.1984). Thus, we conclude the Panel did not err when it determined that employer's admission substantially complied with § 8–43–203(1)(a), at least for purposes of requiring continued payments under § 8–43–203(2)(d).

Although employer maintains that the issue of partial effect was not asserted before the ALJ and consequently was not preserved for the Panel's consideration, we previously noted that the legal impact of the general admission was an issue raised before the ALJ. Because we view that issue as sufficiently broad to encompass the more limited question regarding when the admission could be revoked, we do not perceive any error on the part of the Panel in addressing that question.

## II.

■ Next, claimant argues that the ALJ erred in finding that his injuries were not compensable because they occurred while he was engaged in a personal deviation. Again, we disagree.

■ In most cases, an employee who is away from home on business remains under continuous workers' compensation coverage from the time of departure until the return home. *Silver Engineering Works, Inc. v. Simmons,* 180 Colo. 309, 505 P.2d 966 (1973). Pursuant to this rule, the risks associated with the necessities of eating, sleeping, and ministering to personal needs while away from home are considered incidental to, and within the scope of, the traveling employee's employment. *Phillips Contracting, Inc. v. Hirst,* 905 P.2d 9 (Colo.App.1995).

■ However, if the employee makes a distinct departure on a personal errand, coverage will cease and will not be restored until the errand has been completed. *Pat's Power Tongs, Inc. v. Miller,* 172 Colo. 541, 474 P.2d 613 (1970); *Wild West Radio, Inc. v. Industrial Claim Appeals Office,* 905 P.2d 6 (Colo. App.1995).

■ The burden is on the employer to show that the employee made a distinct departure from the scope of employment while on travel status. *Upchurch v. Industrial Commission,* 703 P.2d 628 (Colo.App.1985). However, whether an employee has returned to the scope of employment after a personal excursion is an issue of fact, with the burden of proof placed on the claimant. *Wild West Radio, Inc. v. Industrial Claim Appeals Office, supra.*

We agree with the Panel that the evidence supported the ALJ's conclusion that claimant deviated on a personal errand and that such

deviation did not end prior to the accident. Claimant testified that on Sunday, February 14, 1999, the date of the accident, he and his assistant sales manager met in the motel lounge for drinks after making some sales calls. Claimant stated that he was in the lounge one to two hours before he left to make "cold calls."

The accident occurred between 8 p.m. and 10 p.m., and toxicology reports indicated claimant's blood alcohol level was .251. Expert evidence introduced by employer equated claimant's blood alcohol level, based upon his height and weight, to consumption of nine regular beers or eleven shots of alcohol. The police report also estimated that claimant was driving 90 miles per hour at the time of the accident.

Based upon the extent of claimant's intoxication and the circumstances of the accident, the ALJ inferred that claimant continued to drink after he left the motel. Although the testimony of a co-worker substantiated the events at the motel prior to claimant's departure, including his intent to make "cold calls," neither the co-worker nor claimant could recall how many drinks claimant had prior to leaving. The co-worker testified, however, that claimant did not appear intoxicated when he left the lounge at approximately 7 p.m. Further, an assistant sales manager for employer testified that, under ordinary company practice, it would be highly unusual for a sales representative to make "cold calls" on a Sunday evening, particularly in an unfamiliar town.

 In view of this evidence, we conclude, as did the Panel, that the ALJ's inference that claimant continued to drink was both logical and reasonable. We also agree with the Panel that in some circumstances the act of consuming alcohol, by itself, can constitute a personal deviation sufficient to remove the claimant from the scope of employment. *See Phillips Contracting, Inc. v. Hirst, supra* (when a personal deviation is asserted, the issue is whether the activity giving rise to the injury, such as stopping at a bar, constitutes a deviation from employment so substantial as to remove the claimant from the employment relationship); *Wild West Radio, Inc. v. Industrial Claim Appeals Office, supra* (claimant injured in a one-car accident while intoxicated had deviated from scope of employment, but evidence supported determination that the deviation had concluded at the time of the accident).

Further, although claimant maintained that he turned around shortly after his departure when he realized he was intoxicated and was heading toward the motel when the accident occurred, he had previously stated to an adjuster both that he was unable to remember where he was going at the time of the accident and that he thought he was proceeding to make sales calls.

 The ALJ may rely upon circumstantial evidence to find that a claimant has satisfied the burden of proving that a personal deviation has ended. *See Mohawk Rubber Co. v. Claimants*, 165 Colo. 526, 440 P.2d 785 (1968)(evidence that decedent was killed in his car while alone at an intersection ten blocks from his home and heading in the direction of home, while not direct evidence, permitted a reasonable inference that he was within the course of employment, even if there had been a prior deviation earlier in the evening). Nevertheless, the ALJ may also reject uncontroverted evidence. *See Cary v. Chevron U.S.A., Inc.*, 867 P.2d 117 (Colo.App.1993). We are bound by the ALJ's factual determinations, even when the evidence is conflicting and would have supported a contrary result. *See Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411 (Colo. App.1995)(not only must we defer to the ALJ's credibility determinations and the resolution of conflicts in the evidence, but we also must not substitute our judgment for that of the ALJ when two equally plausible inferences may be drawn from the evidence).

Thus, because the record supports the inferences drawn by the ALJ, we may not overturn the determination here that claimant failed to prove that he had returned to the scope of his employment at the time of the accident. *See* § 8–43–308, C.R.S.2000; *Sears v. Penrose Hospital*, 942 P.2d 1345 (Colo.App.1997)(we must defer to the ALJ's assessment of the sufficiency and weight of the evidence).

The order of the Panel is affirmed.

ROTHENBERG and STERNBERG, * Judges, concur.