Andrea GOETTMAN, for herself and in the Representative Capacity for the Estate, Heirs and Minor Children (L.R.G., J.M.G. and M.B.G.) of Michael B. Goettman, Plaintiff

v.

NORTH FORK VALLEY RESTAURANT; Thirsty Parrot Pub; Lawrence Jakubiak; Gabe Neuenschwander; Patricia Medina; Kate Benton; Phillip Dunn; Hydramatic Engineering, Pty. LTD.; ARO Mining, Defendants.

No. 07SA167.

Supreme Court of Colorado, En Banc.

Dec. 17, 2007.

Rehearing Denied Jan. 22, 2008.*

* Justice Rice and Justice Eid would grant the petition.

Richards, Brandt, Miller & Nelson, Matthew C. Barneck, Salt Lake City, Utah, Law Offices of Steven B. Smith, PLLC, Steven B. Smith, Salt Lake City, Utah, Attorneys for Plaintiff.

Michael J. Grattan III, P.C., Michael J. Grattan III, Grand Junction, Colorado, Attorneys for Defendant Hydramatic Engineering, Pty. Ltd.

Justice BENDER delivered the Opinion of the Court.

## I. Summary

Defendant–Petitioner Hydramatic Engineering, Pty. Ltd., an Australian limited liability company, petitioned for relief pursuant to C.A.R. 21 from the trial court's order that denied Hydramatic's motion to dismiss this wrongful death action for lack of personal jurisdiction. Plaintiff–Respondent Andrea Goettman argues an agency theory of personal jurisdiction over Hydramatic, alleging that the death of her husband, Michael Goettman, was caused by the negligent and reckless operation of a motor vehicle by Phillip Dunn; that Dunn, up to and at the time of the fatal automobile accident, was an employee of Hydramatic and was acting within the course and scope of his employment; and that Hydramatic, as Dunn's employer, is vicariously liable for Dunn's tortious conduct.

We issued a rule to show cause and now conclude that the jurisdictional facts alleged by Goettman establish minimum contacts and that exercise of personal jurisdiction over Hydramatic comports with traditional notions of fair play and substantial justice under a due process analysis. It is our determination that the jurisdictional facts support

a reasonable inference of specific jurisdiction and demonstrate that the exercise of personal jurisdiction in this case is reasonable.

Hence, we hold that Hydramatic is subject to personal jurisdiction in Colorado because these jurisdictional facts support a prima facie showing of an agency theory of personal jurisdiction under this state's long-arm statute. Accordingly, we discharge the rule to show cause.

## II. Original Jurisdiction

■ Exercise of our original jurisdiction is within our sole discretion. C.A.R. 21(a)(1). Relief under C.A.R. 21 is proper where the trial court proceeds without or in excess of its jurisdiction. *Keefe v. Kirschenbaum & Kirschenbaum, P.C.,* 40 P.3d 1267, 1270 (Colo.2002). "[A] challenge to the personal jurisdiction of the court over someone not present in the state raises the question whether it is unfair to force such a party to defend here at all." *Id.* For this reason, "we have on previous occasions entertained challenges at this stage of the proceedings to the exercise of personal jurisdiction by district courts over out-of-state defendants." *Id.*

## III. Facts and Proceedings Below

This wrongful death action arises out of an automobile accident near Hotchkiss, Colorado, in which Michael Goettman was killed. Goettman was a passenger in an automobile driven by Phillip Dunn when the vehicle went off the right side of the road about five miles from their motel. Goettman was not wearing his seatbelt and was ejected from the vehicle when it rolled. Prior to the accident, the two men were at the North Fork Valley Restaurant and Thirsty Parrot Pub in Hotchkiss, where they had consumed alcoholic beverages. The police report indicates that Dunn's blood alcohol content was 0.187 after he arrived at the hospital. The autopsy report indicates that Goettman's blood alcohol content was 0.300.

Goettman was a Pennsylvania resident and an employee of ARO Mining Products USA, Inc. Dunn is an Australian citizen who, at the time of the automobile accident, was an employee of Hydramatic Engineering, Pty. Ltd.

ARO, a Delaware corporation with its principal place of business in Pennsylvania, is Hydramatic's subsidiary and sole United States seller and distributor.

At ARO's request, Hydramatic sent Dunn, one of Hydramatic's "technical support people," to ARO's headquarters in Pennsylvania to assist ARO with service issues. Hydramatic's finance director, Paul Pittard, authorized Dunn's trip with knowledge that Dunn might visit an ARO customer in Utah. While in the United States, Dunn performed services under the direction of ARO's vice president, Paul Spedding. Dunn volunteered to go to Colorado when he learned that Michael Goettman was traveling there to service a Hydramatic product in the West Elk Mine in Somerset, Colorado, for an ARO customer. Spedding agreed to allow Dunn to accompany Goettman to Colorado. Until the time of the accident, Pittard did not know that Dunn was traveling to Colorado. In her amended complaint, Goettman alleges that Dunn traveled to and worked in not only Pennsylvania, but also Colorado, Utah, and Wyoming. Goettman also alleges that Hydramatic paid for Dunn's costs and expenses, including those he incurred in Colorado, Utah, and Wyoming for renting cars, staying in motels, and eating in restaurants.

The night of the automobile accident, Goettman and Dunn went to the North Fork Valley Restaurant and Thirsty Parrot Pub for dinner, as their motel did not have a restaurant. The men remained at the restaurant and pub and continued to consume alcoholic beverages until about 1:00 a.m., when they left in a vehicle driven by Dunn.

Several months after the accident, Dunn pleaded guilty to vehicular homicide. To recover compensation benefits for the death of her husband, Plaintiff–Respondent Andrea Goettman filed a fatal claim petition against ARO with the Pennsylvania Workers' Compensation Office of Adjudication. In that forum, the workers' compensation judge approved the award of compensation benefits based on his finding that Michael Goettman was a traveling employee acting within the scope of his employment at the time of his death. Following that decision, Goettman filed this wrongful death action in Delta County against the North Fork Valley Restaurant and Thirsty Parrot Pub and its employees who allegedly served alcohol to Michael Goettman and Dunn. Thereafter, Goettman amended her complaint to add Dunn, Hydramatic, and ARO as defendants in this case.

Goettman attempted to serve her complaint on Hydramatic under Colorado's long-arm statute.[1] Pursuant to C.R.C.P. 12(b)(2), Hydramatic filed a motion to dismiss for lack of personal jurisdiction. In a ruling from the bench, the trial court summarily denied Hydramatic's motion. Hydramatic then petitioned this court for review pursuant to C.A.R. 21, and we issued a rule to show cause.

## IV. Analysis

In this opinion, we first explain the procedure for addressing a motion to dismiss for lack of personal jurisdiction. We then evaluate whether the jurisdictional facts set forth in the documentary evidence in this case satisfy the due process analysis under which courts evaluate such a motion.

### A. Procedure for Addressing a Motion to Dismiss for Lack of Personal Jurisdiction

Our recent decision in *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187 (Colo.2005), articulates the principles that govern the type of jurisdictional challenge that presents itself here. *Id.* at 1191–95. In its discretion, a court may address a motion to dismiss for lack of personal jurisdiction on documentary evidence alone or by holding an evidentiary hearing. *Id.* at 1192. When

---

1. Colorado's long-arm statute is found in section 13–1–124, C.R.S. (2007). It states in relevant part:

> Jurisdiction of courts. (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or *by an agent*, submits such a person ... to the jurisdiction of the courts of this state concerning any cause of action arising from: (a) The *transaction of any business* within this state; [or] (b) The *commission of a tortious act* within this state.
> § 13–1–124(1)(a)–(b) (emphasis added).

making this determination, a court should consider whether, in the circumstances of the case, "it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring" an evidentiary hearing on the issue of personal jurisdiction. *Id.* at 1193 (internal quotation omitted). A court may properly invoke an evidentiary hearing when, for example, "the proffered evidence is conflicting and the record is rife with contradictions, or when a plaintiff's affidavits are patently incredible." *Id.* However, courts should be wary of adjudicating the jurisdictional issue with an evidentiary hearing "where the jurisdictional facts are inextricably intertwined with the merits of the case, because doing so could endanger the plaintiff's substantive right to a jury trial." *Id.* (citing *Foster–Miller, Inc. v. Babcock & Wilcox Can.,* 46 F.3d 138, 149 (1st Cir.1995), which states: "This method [of holding an evidentiary hearing] must be used discreetly," *id.* at 146). Evidentiary hearings contemplate binding adjudication and the court's factual findings on the jurisdictional issue could later have a preclusive effect against a party. *Archangel,* 123 P.3d at 1193.

The trial court in this case decided to address Hydramatic's motion to dismiss for lack of personal jurisdiction on documentary evidence alone. Neither Hydramatic nor Goettman requested an evidentiary hearing from the trial court. Moreover, the parties did not challenge the decision at trial and do not raise the issue in this appeal.[2] For this reason, we will not disturb the trial court's decision to address the motion on documentary evidence alone.

 When a court decides to rule on a motion to dismiss for lack of jurisdiction on documentary evidence alone, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.[3] *Id.* at 1192. A prima facie showing exists where the plaintiff raises a reasonable inference that the court has jurisdiction over the defendant. *Id.* Documentary evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties. *Id.*

 A court may not resolve disputed material issues of jurisdictional fact in a motion to dismiss for lack of jurisdiction without holding a hearing. *Id.* Thus, when a court elects to address such a motion on documentary evidence alone, the allegations in the complaint must be accepted as true to the extent that they are not contradicted by the defendant's competent evidence. *Id.* Where the parties' competent evidence presents conflicting facts, the discrepancies must be resolved in favor of the plaintiff. *Id.* As we articulated in *Archangel,* the purpose of a light prima facie burden of proof at this early stage of litigation is to screen out cases "in which personal jurisdiction is obviously lacking and those in which the jurisdictional challenge is patently bogus." *Id.* (internal quotation omitted).

## B. Constitutional Due Process Analysis of a Motion to Dismiss for Lack of Personal Jurisdiction

 Having explained the procedure by which a court addresses a motion to dismiss for lack of personal jurisdiction, we now turn to the legal standard under which a court evaluates such a motion. A plaintiff seeking to invoke a Colorado court's jurisdiction over a nonresident defendant, as in this case, must comply with the requirements of both due process and Colorado's long-arm

2. Goettman argues here, as she did below, that if the court determines that there is a question regarding personal jurisdiction over Hydramatic, then she should be permitted to conduct further discovery on the issue. She does not argue, however, that the trial court's decision to address the issue on documentary evidence was improper.

3. Although a prima facie showing of personal jurisdiction is sufficient to overcome a motion to dismiss for lack of jurisdiction when the court rules on the motion on documentary evidence alone, the plaintiff must establish personal jurisdiction by a preponderance of the evidence if the defendant raises the challenge again prior to the close of trial. *Archangel,* 123 P.3d at 1192 n. 3.

Further, the court may require the plaintiff to establish personal jurisdiction by a preponderance of the evidence at a hearing prior to trial. *Id.* at 1193 ("A court may determine that an evidentiary hearing is warranted even if it has already determined that a plaintiff has made a prima facie showing of personal jurisdiction.").

statute. *Archangel,* 123 P.3d at 1193. Due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless the defendant has "certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Classic Auto Sales, Inc. v. Schocket,* 832 P.2d 233, 236 (Colo.1992). "It is essential that there be some action by which the defendant purposefully avails himself of the privilege of conducting activities in the forum state" so that he will not be subject to personal jurisdiction solely as a result of "random or fortuitous" contacts or the "unilateral activity" of a third party. *Keefe,* 40 P.3d at 1271.

■ The quantity and nature of minimum contacts required for a court to exercise personal jurisdiction over a defendant depends upon whether the plaintiff has alleged that the court has general or specific jurisdiction over the defendant. *Archangel,* 123 P.3d at 1194. A court has general jurisdiction over a defendant if the defendant conducted "continuous and systematic" activities that are "of a general business nature" in the forum state. *Keefe,* 40 P.3d at 1271. A court has specific jurisdiction over a defendant if the injuries alleged "arise out of and are related to activities that are significant and purposefully directed by the defendant at the residents of the forum [state]." *Archangel,* 123 P.3d at 1194.

■ Colorado's long-arm statute extends the jurisdiction of Colorado courts to the maximum limit permitted by the due process clauses of the United States and Colorado Constitutions. *Keefe,* 40 P.3d at 1270. Therefore, if jurisdiction is consistent with due process, then Colorado's long-arm statute authorizes jurisdiction over the defendant. *Id.* Colorado's long-arm statute confers upon Colorado courts personal jurisdiction over any person who or entity that creates certain contacts with Colorado by, among other things, transacting business within the state or committing a tortious act within the state, either personally or through an agent. § 13–1–124(1)(a)-(b). The statute states:

> Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or *by an agent,* submits such a person ... to the jurisdiction of the courts of this state concerning any cause of action arising from: (a) The *transaction of any business* within this state; [or] (b) The *commission of a tortious act* within this state.

*Id.* (emphasis added).

■ Hence, under Colorado's long-arm statute, a nonresident defendant may be subject to personal jurisdiction in Colorado based on the imputed contacts of the defendant's agent. *Id.* To establish this agency theory of personal jurisdiction under Colorado's long-arm statute, the jurisdictional facts must connect the actions of the agent to the principal by either "the transaction of any business" or "the commission of a tortious act" within the state. *See id.; Shepherd v. U.S. Olympic Comm.,* 94 F.Supp.2d 1136, 1142 (D.Colo.2000) ("The contacts of an agent may generally be imputed to the principal if those contacts are made within the scope of the agent's employment.").

■ The agency theory of personal jurisdiction is rooted in the concept that a principal is responsible for the actions of his agent. *First Horizon Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC,* 166 P.3d 166, 177 (Colo.App.2007). However, although an agent's actions may make the principal liable under the substantive law, the agent's actions may be insufficient to establish personal jurisdiction over the principal. Robert C. Casad, *Jurisdiction in Civil Actions* § 4–3[1][a] (3d ed.2006).

■ When a defendant objects to both jurisdiction and liability on the basis that there is no agency relationship, the question of personal jurisdiction appears circular: personal jurisdiction cannot be exercised without determining the question of agency, but the question of agency cannot be determined without exercising personal jurisdiction. *See id.* For this reason, a court's determination of agency for the purpose of personal jurisdiction is a separate determination from, and is not dispositive of, the sub-

stantive issue of the defendant's liability for the actions of the agent. *See id.* As such, a plaintiff need only make a prima facie showing of the connection between the actions of the agent and the principal to defeat a motion to dismiss for lack of personal jurisdiction. *Cf. First Horizon Merch. Servs., Inc.,* 166 P.3d at 178 (holding that there was insufficient proof of an agency theory of personal jurisdiction because the allegations in the complaint presented no specific facts of an agency relationship and were, therefore, "nothing more than conclusory").

To assess whether Goettman has made a prima facie showing of personal jurisdiction over Hydramatic, we review the documentary evidence in this case according to the requirements of due process. Due process requires us to review the documentary evidence for either general or specific jurisdiction. *Archangel,* 123 P.3d at 1194. If we find either type of jurisdiction, then due process requires us to determine whether the exercise of personal jurisdiction over the defendant is reasonable. *Id.* at 1194–95. We review the documentary evidence before us de novo. *Id.* at 1195.

Hydramatic contends that the jurisdictional facts alleged by Goettman are insufficient to satisfy the due process requirements for the exercise of personal jurisdiction under Colorado's long-arm statute. Hydramatic makes various arguments in this regard. First, Hydramatic argues that general jurisdiction is lacking because it neither had nor made business contacts with Colorado. Second, Hydramatic argues that specific jurisdiction is lacking because it did not purposefully direct Dunn's conduct at the residents of Colorado. Lastly, Hydramatic argues that it is unreasonable to subject it to personal jurisdiction in Colorado.

We review the jurisdictional facts set forth in the documentary evidence presented to this court, which includes: Goettman's amended complaint, Hydramatic's affidavits, police reports, the autopsy report, and the Pennsylvania workers' compensation ruling. We conclude that although general jurisdiction is lacking, Goettman has made a prima facie showing of specific jurisdiction. We also conclude that the exercise of personal

jurisdiction over Hydramatic in this case is reasonable. Thus, we hold that Goettman has established a prima facie showing of personal jurisdiction over Hydramatic.

### 1. General Jurisdiction and Minimum Contacts

■ We now turn to Hydramatic's argument that general jurisdiction is lacking because it neither had nor made business contacts with Colorado. General jurisdiction permits a court to exercise jurisdiction over a defendant if the plaintiff demonstrates that the defendant had "continuous and systematic general business contacts" with the forum state. *Archangel,* 123 P.3d at 1194.

■ With its motion to dismiss, Hydramatic submitted the affidavits of Paul Pittard, Hydramatic's finance director, and Paul Spedding, ARO's vice president. These affidavits show that Hydramatic had no bank accounts, real property, offices, employees, advertising, tax obligations, or agents to receive process in Colorado; that Hydramatic does not sell its products directly to Colorado residents, but rather sells its products only to ARO, Hydramatic's subsidiary and sole United States seller and distributor; and that ARO sells and distributes Hydramatic's products to customers throughout the United States, including to the ARO customer in Colorado that purchased a Hydramatic product for the West Elk Mine. In her amended complaint, Goettman alleges that Hydramatic established business contacts with Colorado directly through Dunn and indirectly through ARO.

We resolve any conflict between these jurisdictional facts in favor of Goettman. Nevertheless, we conclude that neither ARO's role as Hydramatic's subsidiary, seller, and distributor nor Dunn's role as Hydramatic's "technical support person" raise a reasonable inference that Hydramatic had continuous and systematic general business contacts with Colorado sufficient to support a prima facie showing of general jurisdiction.

### 2. Specific Jurisdiction and Minimum Contacts

Next, we turn to Hydramatic's argument that specific jurisdiction is lacking because it

did not purposefully direct Dunn's conduct at Colorado's residents, it was unaware that Dunn had traveled to Colorado with Goettman, and Dunn's tortious conduct was outside the scope of his employment.

The minimum contacts analysis regarding specific jurisdiction is a two-part inquiry involving: (1) whether the defendant "purposefully directed" his activities at the residents of the forum state; and (2) whether the litigation "arises out of" the defendant's forum-related conduct. *Keefe*, 40 P.3d at 1271. A single act is sufficient to establish specific jurisdiction. *Id.* We have previously held that the commission of a tort, in itself, creates a sufficient nexus between a defendant and the forum state that satisfies the due process inquiry and establishes specific jurisdiction. *Classic Auto Sales*, 832 P.2d at 237. In such cases, there is no need for further minimum contacts analysis because the defendant is so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the forum state's exercise of personal jurisdiction over the defendant. *Id.* In this case, therefore, the two-part minimum contacts analysis is collapsed into one question: whether Dunn's tortious conduct was sufficiently connected to Hydramatic's business.

We again note that to defeat Hydramatic's motion to dismiss for lack of personal jurisdiction, the documentary evidence need only establish a reasonable inference of the connection between Dunn's conduct and Hydramatic's business. Hence, we evaluate the documentary evidence not under the burden of proof for substantive liability but rather under this light jurisdictional standard.

In her amended complaint, Goettman alleges that Dunn, up to and at the time of the fatal automobile accident, was a traveling employee acting within the course and scope of his employment and that Hydramatic, as Dunn's employer, is vicariously liable for Dunn's tortious conduct. In particular, Goettman alleges that Hydramatic sent Dunn to the United States on its behalf to service Hydramatic products; that Dunn, during his trip, traveled to and worked in not only Pennsylvania, but also Colorado, Utah, and Wyoming; that Hydramatic knew Dunn would rent cars, stay in motels, and eat in restaurants during his trip to the United States; and that Hydramatic paid for such costs and expenses, including those Dunn incurred in Colorado. Goettman further alleges that Dunn traveled to Colorado for the specific purpose of training Michael Goettman on how to service Hydramatic's mining equipment.

In contrast, Hydramatic's affidavits show that Hydramatic sent Dunn to the United States at ARO's request; that although Hydramatic's finance director, Paul Pittard, authorized Dunn's trip to the United States, he did not have any input as to where Dunn would go or what he would do; that even though Pittard knew that Dunn might visit an ARO customer in Utah, he did not know, until the time of the accident, that Dunn was traveling to Colorado; that Dunn, while in the United States, performed tasks and services at the direction of ARO's vice president, Paul Spedding; that Dunn volunteered to go to Colorado after learning that Goettman was traveling there; and that Spedding agreed to allow Dunn to accompany Goettman to Colorado.

Hydramatic argues that it did not purposefully direct Dunn's conduct at Colorado's residents because it neither knew that Dunn was going to Colorado nor participated in the decision to send him there. Hydramatic further argues that it did not purposefully direct Dunn's conduct at Colorado's residents because Dunn's tortious conduct was wholly unrelated to servicing Hydramatic's products, and that it is impermissible, as a matter of law, to construe Dunn's negligent and reckless operation of a motor vehicle while intoxicated to be within the scope of his employment. In support of its argument, Hydramatic cites *Pacesetter Corp. v. Collett*, 33 P.3d 1230 (Colo.App.2001), in which the court of appeals held that an employee was not entitled to workers' compensation benefits because he was not acting within the scope of his employment when he became intoxicated and crashed his car while on a business trip. *Id.* at 1234.

However, *Pacesetter Corp.* supports the proposition that in Colorado, the question of

whether an employee's consumption of alcohol is outside of the scope of his employment depends upon the facts and circumstances of the case. *Id.* at 1233–34; *see also Raleigh v. Performance Plumbing & Heating,* 130 P.3d 1011, 1019 (Colo.2006) ("[T]he question of whether an employee is acting within the scope of the employment is a question of fact."). Another example of this proposition is found in *Wild West Radio, Inc. v. Industrial Claim Appeals Office,* 905 P.2d 6 (Colo. App.1995), where the court of appeals held that an employee, who was injured after crashing her car while intoxicated, had deviated from the scope of her employment when she consumed alcohol, but that the deviation had ceased when she returned to her car for the purpose of driving to a business appointment. *Id.* at 8–9. The court rejected the argument that intoxication prevents an employee from performing any service on behalf of the employer until the employee attains sobriety. *Id.* at 7–8.

■ Moreover, under Colorado law, a traveling employee need not be engaged in the actual performance of work to be considered engaged in the course of his employment. *See, e.g., Hynes v. Donaldson,* 155 Colo. 456, 460, 395 P.2d 221, 223 (1964) ("[A traveling employee, when] lodging in a public accommodation, preparing to eat, or while going to or returning from a meal, is performing an act necessarily incident to his employment."); *see also Saudi Arabian Airlines Corp. v. Dunn,* 395 So.2d 1295, 1296 (Fla.Dist.Ct.App.1981) (holding that the allegations in the complaint constituted a prima facie showing of an agency relationship sufficient to establish personal jurisdiction over a nonresident company, notwithstanding documentary evidence that: (1) at the time of the automobile accident, the company's employee was in the United States for the sole purpose of learning English and acquiring American culture; and (2) the employee was driving a borrowed car and returning from a personal shopping trip to the grocery store).

Here, Goettman alleges that Hydramatic authorized Dunn to travel to the United States to assist ARO with service issues regarding Hydramatic's products, and that Dunn, during that time, traveled to Colorado for the specific purpose of training Michael Goettman on how to service Hydramatic's mining equipment. Goettman argues that Dunn was acting within the scope of his employment when the accident occurred because he was a traveling employee who was returning to his motel after a meal, activities that she alleges were necessarily incident to his employment. Goettman's argument is supported by the Pennsylvania workers' compensation ruling on Goettman's fatal claim petition for compensation benefits. In that case, the workers' compensation judge approved the award of compensation benefits based on his finding that Michael Goettman was a traveling employee acting within the scope of his employment at the time of his death. We note that the judge also found that Michael Goettman's intoxication was unrelated to his death because Dunn, not Goettman, was driving the car at the time of the accident.

In this case, Goettman's allegations must establish a reasonable inference that Dunn's tortious conduct was sufficiently connected to Hydramatic's business. Guided by this standard, we conclude that the jurisdictional facts alleged by Goettman support a reasonable inference that Dunn was Hydramatic's agent up to and at the time of the accident. We acknowledge that at this early stage of litigation, there are conflicts between the jurisdictional facts regarding the scope of Dunn's employment. However, for the purpose of a motion to dismiss for lack of jurisdiction, we must resolve these conflicts in Goettman's favor. Accordingly, we conclude that Goettman's allegations support a prima facie showing of specific jurisdiction over Hydramatic.

### 3. Reasonableness and Traditional Notions of Fair Play and Substantial Justice

Lastly, we address Hydramatic's argument that even if this court finds sufficient contacts to establish general or specific jurisdiction over Hydramatic, it is unreasonable and thus a violation of due process to subject Hydramatic to personal jurisdiction in Colorado.

■ Once it has been determined that a defendant has the requisite minimum

contacts to establish either general or specific jurisdiction, these contacts must be considered along with other factors to determine whether subjecting the defendant to personal jurisdiction in the state would comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154; *Classic Auto Sales*, 832 P.2d at 236. The inquiry into fair play and substantial justice requires a determination of whether the exercise of personal jurisdiction over the defendant would be "reasonable" under the circumstances of the case. *Archangel*, 123 P.3d at 1195. When there is a lesser showing of minimum contacts, as in this case, considerations such as the burden on the defendant, the forum state's interest in resolving the controversy, and the plaintiff's interest in obtaining effective and convenient relief may serve to establish the reasonableness of exercising personal jurisdiction. *Keefe*, 40 P.3d at 1271–72. We explained in *Keefe* that "the question of the legitimacy of exercising specific jurisdiction over a nonresident who is not present in the state and has not expressly agreed to jurisdiction largely involves an ad hoc analysis of the facts of each case." *Id.* We further noted that "the individual nature of the determination makes it extremely difficult to compare precisely the unique circumstances and outcomes of different cases." *Id.*

Hydramatic contends that it is unreasonable to subject it to personal jurisdiction in Colorado because it would be unduly burdensome for Hydramatic, an Australian company, to defend a lawsuit in Colorado; because Colorado has little interest in adjudicating this case considering Goettman is a Pennsylvania resident who has already received workers' compensation benefits in Pennsylvania; and because a dismissal of this action would not prevent Goettman from obtaining relief from other defendants over which Colorado courts have proper personal jurisdiction.

We recognize that the burden on Hydramatic to defend a lawsuit in Colorado is severe. *See Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). However, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Id.*

In this case, the interests of the plaintiff and the forum state are substantial. Although Goettman resides in Pennsylvania and received an award for workers' compensation benefits from the Pennsylvania Workers' Compensation Office of Adjudication, she has not received a judgment on her tort claim from any court. Presumably, Goettman filed her tort claim in Colorado because the automobile accident that killed her husband occurred in this state. Because Goettman's claim sounds in tort and because the documentary evidence casts doubt as to whether Hydramatic would be subject to general jurisdiction in any state, we are uncertain that a court in another state, such as Pennsylvania, would exercise personal jurisdiction over Hydramatic for this claim. Thus, if we determine that Colorado courts do not have personal jurisdiction over Hydramatic in this litigation, then Goettman will likely lose her right to pursue a claim against Hydramatic in any jurisdiction other than, perhaps, Australia. Because the automobile accident that killed Michael Goettman occurred in Colorado, Colorado has a legitimate interest in the adjudication of this claim. Unlike the claim arising out of the automobile accident in *Asahi*, which concerned indemnification rather than safety, *id.* at 114–15, 107 S.Ct. 1026, the claim arising out of the automobile accident in this case directly concerns the safety of any person traveling on Colorado's roads.

Moreover, Colorado courts have explained that when a defendant commits a tort, he becomes "so connected with the forum state that traditional notions of fair play and substantial justice are not offended by the state's exercise of jurisdiction." *First Horizon Merch. Servs., Inc.*, 166 P.3d at 175

(citing Classic Auto Sales, 832 P.2d at 237). Goettman alleges that Dunn's conduct was tortious and that Hydramatic, as Dunn's employer, is liable for Dunn's conduct. It is our determination that this litigation "arises out of" Dunn's tortious conduct and that Dunn's employment forms the basis of the activity "purposefully directed" by Hydramatic at the residents of this state. Given these minimum contacts and considering the totality of the circumstances of this case, we conclude that it is reasonable for Hydramatic to defend Goettman's claims of negligence and recklessness in Colorado. As such, the exercise of personal jurisdiction under Colorado's long arm statute comports with traditional notions of fair play and substantial justice.

## V. Conclusion

We hold that the jurisdictional facts set forth in the documentary evidence before us support a prima facie showing of Goettman's agency theory of personal jurisdiction under Colorado's long-arm statute and therefore subject Hydramatic to personal jurisdiction in this state. Hence, we discharge the rule to show cause.

Justice EID dissents, Justice RICE joins in the dissent.

JUSTICE EID, dissenting.

The majority concludes that the trial court can assume personal jurisdiction over Hydramatic, an Australian limited liability company, because Goettman established "a reasonable inference that Dunn's tortious conduct was sufficiently connected to Hydramatic's business." Maj. op. at 70. Yet it also "acknowledge[s] that at this early stage of litigation, there are conflicts between the jurisdictional facts regarding the scope of Dunn's employment." Id. In such a situation, where the question is whether a trial court can assert personal jurisdiction over an out-of-state defendant, and there is conflicting evidence with regard to the facts necessary to support a finding of jurisdiction, the trial court should hold a hearing. Because the majority decides the jurisdictional issue in Goettman's favor instead of remanding the case to the trial court for a hearing, I respectfully dissent from its opinion.

## I.

In *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187 (Colo.2005), we set forth the procedure a trial court should follow when considering a defendant's 12(b)(2) motion to dismiss for lack of personal jurisdiction. We observed that "[i]n its discretion, a court may address a 12(b)(2) motion prior to trial based solely on the documentary evidence or by holding a hearing." *Id.* at 1192. As the majority recognizes, however, the trial court's discretion to decide not to hold a hearing is not unbounded. Maj. op. at 65–66. As we stated in *Archangel:*

> In deciding whether a hearing on the issue of personal jurisdiction is appropriate, *the court must determine* if the circumstances of a particular case indicate it is unfair to force an out-of-state defendant to incur the expense and burden of a trial on the merits in the local forum without first requiring more of the plaintiff than a prima facie showing of facts essential to in personam jurisdiction. A court may so determine, for example, when the proffered evidence is conflicting and the record is rife with contradictions . . . .

123 P.3d at 1193 (citation omitted) (emphasis added). Thus, as a preliminary matter, the court "must determine" whether it would be unfair to require an out-of-state defendant to defend in the forum based merely on an inference of jurisdiction. If it would, the trial court should hold a hearing.

Ordinarily, of course, a trial court is not required, on a Rule 12 motion, to hold a hearing and make findings of fact and conclusions of law. *See* C.R.C.P. 52 ("Findings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 . . . ."); *Leidy's, Inc. v. H2O Eng'g, Inc.,* 811 P.2d 38, 39 (Colo.1991) (discussing Rule 52). But the issue of whether personal jurisdiction can be asserted over an out-of-state defendant implicates significant due process concerns. *See Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 111–13, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion). As we stated in *Archangel,* although the "due process analysis involves an ad hoc evalua-

tion of the facts of each case," this "does not mean that due process analysis is discretionary." 123 P.3d at 1194 (citations omitted). The dictates of due process, as set forth in *Archangel*, require a trial court to consider whether it would be unfair to assume jurisdiction based on a mere inference of jurisdiction. In my view, more than a mere inference is required to proceed in this case.

The majority appears to agree with this analysis of *Archangel*, but rejects its application in this case on the ground that Hydramatic did not ask for a hearing. Maj. op. at 65–66. Hydramatic plainly argued before the trial court, however, that it would violate due process and our decision in *Archangel* for the court to assume personal jurisdiction over it because it had no contacts with Colorado. Hydramatic thus argued that the trial court could not proceed with the case *at all*, which necessarily includes the argument that it could not proceed based on a mere inference of jurisdiction. Moreover, as the majority acknowledges, Hydramatic could simply request a hearing on personal jurisdiction when the case returns to the trial court. *See* maj. op. at 66 n. 3 ("[T]he [trial] court may require the plaintiff to establish personal jurisdiction by a preponderance of the evidence at a hearing prior to trial."). Thus, the question raised in this case remains the same—namely, whether this is the type of case that can proceed on a mere inference of jurisdiction. I do not believe it is.

In *Archangel*, we stated that it would be unfair to proceed based on a mere inference of jurisdiction "when the proffered evidence is conflicting." 123 P.3d at 1193 (citation omitted). The majority acknowledges that in this case "there are conflicts between the jurisdictional facts regarding the scope of Dunn's employment." Maj. op. at 70. It therefore should remand the case for a hearing on personal jurisdiction.

Without such a hearing, the majority permits the case to proceed on an inference that Dunn's tortious conduct was "sufficiently connected to Hydramatic's business." *Id.* The majority finds such a connection between Dunn's conduct and Hydramatic based on the fact that Dunn was a traveling employee for the company. *Id.* at 69–70. Yet this is a fairly slim reed on which to rest a finding of personal jurisdiction. There must be something more than a mere employment relationship to support such a finding; if not, Hydramatic would be subject to personal jurisdiction for *any* action taken by Dunn during his stay in Colorado.

The record, as it currently stands, suggests that the employment relationship may be the only thing that connects Hydramatic to the accident involving Michael Goettman. According to the Pennsylvania workers' compensation ruling, Dunn and Michael Goettman had completed their work and left the mine around 3:30 p.m. on Friday afternoon, and they had no further work-related duties to perform that day or the next. In fact, they had planned to go snowboarding in Aspen, Colorado, sometime Saturday. They arrived at the restaurant Friday night around 6:00 or 7:00 p.m. and had dinner. At some later point, they began drinking and became extremely intoxicated. They left around 1:00 a.m. in a vehicle driven by Dunn. Soon thereafter, Dunn's vehicle went off the road, killing Michael Goettman. Dunn's blood alcohol content was 0.187; Michael Goettman's was 0.300. Dunn is currently incarcerated in Colorado following his guilty plea to felony operation of a motor vehicle while intoxicated. The Pennsylvania workers' compensation ruling concluded that Michael Goettman's intoxication did not preclude an award of benefits to Goettman because "[Michael Goettman's] intoxication was unrelated to his death as he was a passenger in the rental car driven by Phillip Dunn whose intoxication caused the accident."

The question we consider today is, of course, much different, as we are deciding whether *Dunn's* driving in a state of extreme intoxication, not Michael Goettman's riding as a passenger, could be within the scope of Dunn's employment. The conduct giving rise to the lawsuit must be within the employee's scope of employment for it to be attributed to his or her employer for purposes of personal jurisdiction. *See Shepherd v. U.S. Olympic Comm.*, 94 F.Supp.2d 1136, 1142 (D.Colo.2000) ("The contacts of an agent may generally be imputed to the principal if

those contacts are made within the scope of the agent's employment.").[1] We have held that whether an employee's conduct is within the scope of employment depends upon whether that conduct was "necessarily incidental" to that employment. *Hynes v. Donaldson*, 155 Colo. 456, 459, 395 P.2d 221, 223 (1964); *see also Lytle v. Kite*, 728 P.2d 305, 310 (Colo.1986) (citing *Hynes* ).

Here, again on this record, it is difficult to see how Dunn's driving in a state of extreme intoxication could be deemed "*necessarily* incidental" to his employment. The accident occurred long after he had finished his work for the day, and long before he was to perform any work-related duties again. While it may be true that "a traveling employee need not be engaged in the actual performance of work to be considered engaged in the course of his employment," maj. op. at 70 (citing *Hynes* ), the conduct still must be "necessarily incidental" to that employment. In *Hynes* for example, a traveling employee got into an accident while driving to his hotel room after having dinner with a company official for the purpose of discussing company business. 155 Colo. at 459, 395 P.2d at 223. We noted that a traveling employee "must of necessity eat and sleep in various places in order to carry on the business of his master." *Id.* at 459–60, 395 P.2d at 223. *Hynes* is simply inapposite to this case. That case did not involve driving in a state of extreme intoxi-cation; moreover, in contrast to *Hynes*, it appears in this case that both work and the meal were over before the drinking began.

Finally, the majority appears to reason that, because scope of employment is normally a fact issue to be decided by the jury, Goettman need only demonstrate that Dunn was a traveling employee in order to make a prima facie showing that Dunn was acting within the scope of his employment such that his contacts may be imputed to Hydramatic for the purpose of personal jurisdiction. Maj. op. at 69–70.[2] But in my view, the fact-intensive nature of the scope of employment inquiry leads me not to the majority's conclusion that assertion of jurisdiction is proper in this case, but rather to the conclusion that a hearing must be held before that determination can be made.

The majority holds that the issue of whether Dunn was acting within the scope of his employment is a necessary part of the personal jurisdictional inquiry, maj. op. at 68–70, perhaps because of the uncertainty regarding Hydramatic's role in sending Dunn to Colorado.[3] However, the majority does not directly address the scope of employment issue itself, choosing instead to resolve the issue in Goettman's favor for now. *Id.* at 70. In my view, the record is insufficient at this point to arrive at such a conclusion. There was very

---

1. It appears that whether scope of employment is part of the jurisdictional inquiry (as opposed to the merits) depends upon the facts and circumstances of the case. If there is sufficient purposeful availment on the part of the principal without considering whether the conduct of the agent was within the scope of employment, consideration of that issue in the context of personal jurisdiction may not be necessary. If the contacts of the agent are necessary to a finding of personal jurisdiction over the principal, however, those contacts may not be imputed to the principal unless they occur within the scope of the agent's employment. *See, e.g., Shepherd*, 94 F.Supp.2d at 1142. I agree with the majority that this case falls into the latter category. *See* maj. op. at 70 ("Goettman's allegations must establish a reasonable inference that Dunn's tortious conduct was sufficiently connected to Hydramatic's business.").

2. While scope of employment is ordinarily a fact question for the jury, there may be some situations in which an employee has deviated so far outside the scope of employment that the ques-tion should be decided as a matter of law. *See Moses v. Diocese of Colo.*, 863 P.2d 310, 331 (Colo.1993) (holding, as a matter of law, that clergy's tortious sexual conduct toward parishioner was not within the scope of the clergy's employment); *see also Lytle*, 728 P.2d at 310 (stating that a directed verdict on the scope of employment issue is appropriate where there is "no evidence or inference" that the employee was acting within the scope of employment).

3. In its motion to dismiss for lack of personal jurisdiction, Hydramatic argued that it did not have sufficient purposeful contacts with Colorado because it did not send Dunn to Colorado, but rather to ARO's headquarters in Pennsylvania. According to Hydramatic, it was ARO's decision—and ARO's decision alone—to send him to Colorado. Goettman responded that ARO is Hydramatic's agent and that therefore the acts and knowledge of ARO should be imputed to Hydramatic. Hydramatic's relationship with ARO and its participation in the decision to send Dunn to Colorado, if any, are disputed factual issues further justifying a hearing in this case.

little discussion of Dunn's scope of employment in the briefing before the trial court. Hydramatic noted that "work related activities related to ARO's Colorado customer were completed in the afternoon on March 11, 2005," and that "[t]he accident occurred at approximately 2:00 a.m." the following morning. Moreover, it is not appropriate to decide this issue merely on the record developed during the Pennsylvania workers' compensation ruling because, as noted above, that proceeding considered a different question than the one before us today. Given these circumstances, this case should be remanded to the trial court, and Goettman and Hydramatic should be permitted to re-brief the issue of personal jurisdiction, to conduct limited discovery on the issue, and to present evidence at a hearing.

## II.

We should remand this case to the trial court to hold a hearing on whether it may, within the dictates of due process, assume personal jurisdiction over Hydramatic. Because the majority permits the trial court to assume jurisdiction without such a hearing, I respectfully dissent from its opinion.

I am authorized to say that Justice RICE joins in this dissent.