Opinion by JUDGE FOX
¶ 1 In this interlocutory appeal, defendant Align Corporation Limited (Align) appeals the trial court's order denying its C.R.C.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. We accepted Align's C.A.R. 4.2 petition to address the effect of the United States Supreme Court's plurality opinion in J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011), on Colorado's personal jurisdiction framework under Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187 (Colo.2005). The Colorado Supreme Court has yet to directly address, after the J. McIntyre decision, the proper test to be applied when evaluating specific jurisdiction based on a stream of commerce theory.
¶ 2 We conclude that Justice Breyer's concurrence in the judgment in J. McIntyre -relying on the stream of commerce theory articulated in the United States Supreme Court's majority opinion in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) -constitutes the Court's holding and guides our evaluation of the specific jurisdiction question posed here. We further conclude that Archangel remains precedential authority in the wake of J. McIntyre, and consequently, we affirm the trial court's denial of Align's motion to dismiss.
I. Background
¶ 3 Align is a Taiwanese company that manufactures and sells remote control helicopters and related parts. Align has no physical corporate presence in the United States, but it engages distributors in the United States who sell Align's products to retailers who, in turn, sell the products to consumers. When the incident at issue here arose, Align had engaged four distributors in the United States: defendant Horizon Hobby, Inc. (Horizon); Assurance Services, Inc.; Heli Wholesaler, Inc.; and GrandRC, LLC.
¶ 4 Plaintiff, Allister Mark Boustred, purchased a remote control T-Rex 450SA ARF model helicopter manufactured by Align. Boustred later purchased a main rotor holder, the part that attaches the main rotor to the helicopter, from Hobby Town Unlimited, Inc., a retail store in Fort Collins, Colorado. Align manufactured the main rotor holder, and Horizon-which has an exclusive distribution agreement with Align for the T-Rex 450SA ARF model helicopters-distributed it. Boustred alleges that the main rotor holder broke during testing and caused the *643 main rotor to release and strike him, resulting in the loss of an eye.
¶ 5 Boustred filed strict product liability and negligence claims against Align and Horizon, among others, in Larimer County alleging that the main rotor holder allegedly malfunctioned. After Boustred served Align in Taiwan, Align asked the trial court to quash service and dismiss all claims against it for lack of personal jurisdiction under C.R.C.P. 12(b)(2). The trial court found that, under Archangel, it could assert specific jurisdiction over Align, and denied the motion.
¶ 6 Later, the trial court granted Align's motion for certification pursuant to C.A.R. 4.2. We accepted the appeal.
II. Personal Jurisdiction
A. Standard of Review
¶ 7 Whether a trial court has jurisdiction is a question of law that we review de novo. Giduck v. Niblett, 2014 COA 86, ¶ 11, 408 P.3d 856. We also review de novo a trial court's ruling on a motion to dismiss. Id.
B. Legal Principles of Specific Jurisdiction
¶ 8 A plaintiff seeking to invoke a Colorado court's jurisdiction over a nonresident must comply with the requirements of Colorado's long-arm statute and constitutional due process. Archangel, 123 P.3d at 1193. The General Assembly intended Colorado's long-arm statute to confer the maximum jurisdiction allowable by the Due Process Clauses of the United States and Colorado Constitutions. Id. ; see § 13-1-124, C.R.S. 2015. Because our constitutional due process analysis necessarily addresses the requirements of Colorado's long-arm statute, we need not separately address them. Archangel, 123 P.3d at 1193.
¶ 9 To meet the requirements of due process, a defendant must have sufficient minimum contacts with the forum state so that the defendant may reasonably foresee being answerable in court there. Id. at 1194 ; see also Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The quantity and nature of the required minimum contacts depend on whether the plaintiff alleges general or specific jurisdiction. Archangel, 123 P.3d at 1194. Here, because Boustred's complaint only alleges that the trial court had specific jurisdiction over Align, we need not address general jurisdiction.
¶ 10 Specific jurisdiction exists when the alleged injuries resulting in litigation arise out of and are related to a defendant's activities that are significant and purposefully directed at residents of the forum state. Id. ; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). As a result, evaluating sufficient minimum contacts for specific jurisdiction involves a two-part test, assessing (1) whether the defendant purposefully availed itself of the privilege of conducting business in the forum state, and (2) whether the litigation arises out of the defendant's forum-related contacts. Archangel, 123 P.3d at 1194. The first prong-purposeful availment-precludes personal jurisdiction resulting from random, fortuitous, or attenuated contacts. Id. The second prong-the "arising out of" requirement-tests the relationship between the defendant's actions giving rise to the litigation and the forum state. Id.
¶ 11 Once a plaintiff establishes that a defendant has the requisite minimum contacts with the forum state, the next inquiry involves a determination of whether a court's exercise of personal jurisdiction over the defendant is reasonable and comports with notions of fair play and substantial justice. Id. at 1194-95 ; see also Int'l Shoe, 326 U.S. at 316, 66 S.Ct. 154. According to Align, merely placing a product into the stream of commerce, without more, is insufficient for a Colorado court to assert personal jurisdiction. Boustred and Horizon disagree.
C. Stream of Commerce Jurisprudence
¶ 12 In World-Wide Volkswagen, the Supreme Court held that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297-98, 100 S.Ct. 559. The Court noted that when the *644 sale of a product results from efforts of a manufacturer or distributor to serve, directly or indirectly, the market for its product in other states, it is not unreasonable to subject that manufacturer or distributor to suit in one of those states when the product causes injury there. Id. at 297, 100 S.Ct. 559.
¶ 13 Since World-Wide Volkswagen established the stream of commerce theory, United States Supreme Court justices have provided competing versions of the scope of the theory in plurality decisions. For example, in Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion), Justice O'Connor, writing for the plurality, dismissed a broad interpretation of World-Wide Volkswagen 's stream of commerce theory. Asahi, 480 U.S. at 110-11, 107 S.Ct. 1026. Justice O'Connor's plurality opinion adopted a stricter interpretation of the stream of commerce theory:
The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State.... But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.
Id. at 112, 107 S.Ct. 1026.
¶ 14 Justice Brennan, joined by three other justices, concurred in the Court's judgment but refused to accept Justice O'Connor's more stringent interpretation of the stream of commerce theory. Id. at 116, 107 S.Ct. 1026. Justice Brennan's concurrence opined that the stream of commerce does not refer to an unpredictable current which sweeps a product further than reasonably foreseeable, but instead, it consists of a "regular and anticipated flow of products from manufacture to distribution to retail sale." Id. at 117, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment). Additionally, a defendant who places goods into the stream of commerce "benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity." Id. (Brennan, J., concurring in part and concurring in the judgment). Justice Brennan noted that World-Wide Volkswagen carefully differentiated between a good reaching a forum due to a distribution chain versus the unilateral act of a consumer and concluded that World-Wide Volkswagen 's articulation of the stream of commerce theory should not be altered. Id. at 120-21, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment).
¶ 15 Most recently, a similarly divided court re-evaluated the stream of commerce approach to specific personal jurisdiction in J. McIntyre, 564 U.S. at 877, 131 S.Ct. at 2785 (plurality opinion). Justice Kennedy, writing for the plurality, rejected Justice Brennan's concurrence in Asahi and adopted Justice O'Conner's articulation of the more stringent "stream of commerce plus" approach. Id. at 883-85, 131 S.Ct. at 2789-90. Justice Breyer concurred in the Court's judgment, but he disagreed with the plurality's reliance on Justice O'Connor's stream of commerce plus theory, instead focusing his analysis on the original stream of commerce approach articulated in World-Wide Volkswagen . Id. at 888-90, 131 S.Ct. at 2792-93.
D. Implementation of the Stream of Commerce Theory
¶ 16 For years after the Supreme Court's decision in Asahi, and later in J. McIntyre, courts have split on the proper approach to the stream of commerce theory. See Etchieson v. Cent. Purchasing, LLC, 232 P.3d 301, 306 (Colo.App.2010).
¶ 17 When "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.' " Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting *645 Gregg v. Georgia, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) ). We therefore begin by evaluating the recent United States Supreme Court plurality opinions and concurrences to determine which analysis reached its conclusion and became the judgment of the Court on the narrowest grounds. See id.
¶ 18 In J. McIntyre, Justice Kennedy's plurality reached beyond World-Wide Volkswagen -the reigning majority opinion on the stream of commerce theory-and adopted the stream of commerce plus theory articulated by Justice O'Conner's plurality opinion in Asahi . J. McIntyre, 564 U.S. at 885, 131 S.Ct. at 2790. But Justice Breyer concurred only in the judgment, focusing his analysis on the accepted theory from World-Wide Volkswagen and cases interpreting it, that a single, isolated sale of a product in a state-even when the defendant has placed his goods into the stream of commerce-is not a sufficient basis to assert personal jurisdiction over a defendant.[1] Id. at 2792 (Breyer, J., concurring in the judgment). Evaluating these two opinions, we conclude that Justice Breyer's concurring opinion reached its conclusion on the narrowest grounds, and we therefore follow its guidance. See Marks, 430 U.S. at 193, 97 S.Ct. 990.
¶ 19 In Asahi, Justice O'Connor's plurality opinion abandoned World-Wide Volkswagen 's simpler stream of commerce approach and added the requirement that a plaintiff must prove additional conduct of a defendant, beyond placing a product into the stream of commerce, to establish sufficient minimum contacts with the forum state. Asahi, 480 U.S. at 112, 107 S.Ct. 1026. However, Justice Brennan's concurrence relied on World-Wide Volkswagen 's stream of commerce analysis, rather than adopting additional requirements. Id. at 120, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment). Because Justice Brennan's concurrence reached its conclusion based solely on existing case law and without articulating a more stringent approach, its analysis is the narrowest, and we follow its guidance. See Marks, 430 U.S. at 193, 97 S.Ct. 990.
¶ 20 Justice Breyer's and Justice Brennan's respective concurrences, along with the analysis from World-Wide Volkswagen, reveal that a plaintiff may establish a defendant's sufficient minimum contacts by showing that the defendant placed goods into the stream of commerce with the expectation that the regular flow or regular course of sales could lead the product to the forum state. See J. McIntyre, 564 U.S. at 888, 131 S.Ct. at 2792 (Breyer, J., concurring in the judgment); Asahi, 480 U.S. at 120-21, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment); World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. 559.
¶ 21 Even so, Align argues that adopting the analyses of the concurrences in J. McIntyre and Asahi would run afoul of our supreme court's acceptance of other United States Supreme Court plurality opinions and our state supreme court's articulated duty to follow the United States Supreme Court's existing precedent concerning federal constitutional law. People v. Schaufele, 2014 CO 43, ¶ 33, 325 P.3d 1060. However, Schaufele declined to follow Chief Justice Roberts's opinion in Missouri v. McNeely, 569 U.S. 141, 166, 133 S.Ct. 1552, 1569, 185 L.Ed.2d 696 (2013) (Roberts, C.J., concurring in part and dissenting in part), because the analysis proposed a new rule in addition to existing exceptions to the Fourth Amendment's warrant requirement. Schaufele, ¶ 32. As only two other Justices supported the new rule, it lacks majority status. McNeely, 569 U.S. 141, 133 S.Ct. at 1569. This treatment of the fragmented McNeely decision is directly in line with the Supreme Court's guidance on how we should approach similar plurality decisions-that the opinion reaching its conclusion on the narrowest grounds constitutes the Court's holding. See Marks, 430 U.S. at 193, 97 S.Ct. 990. Our analysis here follows this approach.
¶ 22 For the same reasons, we are not persuaded by Align's reliance on In re Adoption of C.A., 137 P.3d 318, 325 (Colo.2006), for the proposition that a plurality opinion from the United States Supreme Court binds *646 state courts. In C.A., it is not clear whether the precedential value of Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality opinion), on state court decisions was raised as an issue, and thus its treatment of Troxel is not instructive here. Instead, we rely on the United States Supreme Court's direction on how to evaluate the precedential value of its plurality decisions. See Marks, 430 U.S. at 193, 97 S.Ct. 990.
¶ 23 And we are not alone in honoring the plurality opinions in J. McIntyre and Asahi only on the narrowest rationale contained in the concurrences. See, e.g., Ainsworth v. Moffett Eng'g, Ltd., 716 F.3d 174, 178 (5th Cir. 2013) (concluding Justice Breyer's concurring opinion in McIntyre is controlling); AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed.Cir.2012) (same); Dehmlow v. Austin Fireworks, 963 F.2d 941, 947 (7th Cir. 1992) (following the stream of commerce theory articulated in World-Wide Volkswagen instead of Justice O'Connor's stream of commerce plus approach); Hatton v. Chrysler Canada, Inc., 937 F.Supp.2d 1356, 1366 (M.D.Fla.2013) (stating that J. McIntyre was a fragmented decision, and Justice Breyer's concurrence is the "holding"; therefore, the stream of commerce theory from World-Wide Volkswagen applies); Sproul v. Rob & Charlies, Inc., 304 P.3d 18, 33 (N.M.Ct.App.2012) (same); State v. Atl. Richfield Co. , 2016 VT 22, ¶¶ 19-21, 142 A.3d 215 (Vt.2016) (same).[2]
¶ 24 We conclude that Justice Breyer's concurrence in J. McIntyre and Justice Brennan's concurrence in Asahi are controlling and together hold that World-Wide Volkswagen remains the prevailing decision articulating the stream of commerce theory. Because Archangel was decided many years after World-Wide Volkswagen and based its personal jurisdiction framework on the same line of cases that World-Wide Volkswagen utilized, the Supreme Court's decision in J. McIntyre did not alter Archangel 's precedential value on specific jurisdiction in Colorado.
III. Personal Jurisdiction Over Align
¶ 25 When, as here, a court rules "on a motion to dismiss for lack of jurisdiction on documentary evidence alone, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Goettman v. N. Fork Valley Rest., 176 P.3d 60, 66 (Colo.2007). Documentary evidence consists of the allegations in the complaint along with any affidavits and any other evidence submitted by the parties. Id. The court must accept as true all allegations in the complaint to the extent they are not contradicted by the defendant's competent evidence. Id. Where the parties' competent evidence presents conflicting facts, the discrepancies must be resolved in the plaintiff's favor. Id.
¶ 26 Here, the trial court found:
• Align provided marketing materials to its distributors, attended trade shows in the United States where Align actively marketed its products, and established channels through which consumers could receive assistance with their Align products.
• Align injected a substantial number of products into the stream of commerce, knowing that those products would reach Colorado.
• Align took steps to market its products in the United States and Colorado.
*647 ¶ 27 We agree with the trial court's ruling that Boustred made a sufficient prima facie showing of Colorado's personal specific jurisdiction over Align. The documentary evidence, viewed in the light most favorable to Boustred, establishes that Align purposefully availed itself of the privilege of conducting business in Colorado by placing its products into the stream of commerce-regularly using four distributors based in the United States and covering the entire country without restriction[3] -with the expectation that they would be sold to consumers in Colorado via the regular flow of commerce. See World-Wide Volkswagen, 444 U.S. at 298, 100 S.Ct. 559. Align's presence at United States trade shows and distribution of specifically designed marketing materials in the United States establish a prima facie showing that the presence of the allegedly defective main rotor holder in Colorado did not result from random, fortuitous, or attenuated contacts with Colorado. See Archangel, 123 P.3d at 1197. As well, Boustred's injury allegedly arose directly from Align's contacts with Colorado-the malfunction of the remote control helicopter and its replacement parts. Id. at 1194. Boustred has thus made a prima facie showing that Align maintains sufficient minimum contacts with Colorado so that it could reasonably foresee being subject to suit here. Id.
¶ 28 Similarly, we affirm the trial court's ruling that asserting personal jurisdiction over Align is reasonable and does not offend traditional notions of fair play and substantial justice. See id. at 1194-95 ; see also § 13-1-124(1)(a)-(b) (stating that long-arm jurisdiction is established by transacting business within the state or committing a tortious act within the state, personally or through an agent).[4] Although for Align, a Taiwanese manufacturer, to litigate in Colorado may be burdensome, the burden is outweighed by Align's election to avail itself of the benefits and protections of Colorado's laws which regulate and facilitate commercial activity. See Asahi , 480 U.S. at 117, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment). And, Colorado's interest in protecting its residents from defective products and Boustred's interest in obtaining relief lead us to conclude that an assertion of personal jurisdiction over Align is reasonable.
IV. Conclusion
¶ 29 The order is affirmed.
JUDGE TAUBMAN and JUDGE HAWTHORNE concur.

We note also that a total of five justices (one joining Justice Breyer's concurrence and three dissenting) rejected the plurality's approach in J. McIntyre.

Some courts have adopted the stream of commerce plus approach. See, e.g. , Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 683 (1st Cir. 1992). However, most courts have avoided choosing one approach over the other and have decided cases based on facts in the record. Pennzoil Prods. Co. v. Colelli & Assocs., Inc., 149 F.3d 197, 205 (3d Cir. 1998). Boustred and Horizon orally argued that the trial court applied Justice O'Connor's stream of commerce plus analysis when it asserted personal jurisdiction over Align and that the "something more" was satisfied by Align providing its United States distributors with marketing materials, attending trade shows, and establishing channels whereby customers could receive assistance from Align with their Align products. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion). Because we conclude that the proper analysis is the stream of commerce test articulated in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and not Justice O'Connor's "stream of commerce plus test," we need not address this issue.

During oral argument, Horizon indicated that one or more distributors were authorized by Align to sell its products throughout the United States, Mexico, and Canada.

Colorado's long-arm jurisdiction is satisfied if constitutional due process is present. See Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1193 (Colo.2005).