CHIEF JUSTICE RICE delivered the Opinion of the Court.
¶1 This case requires us to examine the stream of commerce doctrine and to determine the prerequisites for a state to exercise specific personal jurisdiction over a non-resident *166 defendant.[1] We conclude that World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), sets out the controlling stream of commerce doctrine. This doctrine establishes that a forum state may assert jurisdiction where a plaintiff shows that a defendant placed goods into the stream of commerce with the expectation that the goods will be purchased in the forum state. Applying this doctrine to the case before us, we conclude that the plaintiff made a sufficient showing under this doctrine to withstand a motion to dismiss.
I. Facts and Procedural History
¶2 In 2012, Respondent Allister Mark Boustred, a Colorado resident, purchased a replacement main rotor holder for his radio-controlled helicopter from a retailer in Fort Collins, Colorado. The main rotor holder was allegedly manufactured by Petitioner Align Corporation Limited ("Align"), a Taiwanese corporation, and distributed by Respondent Horizon Hobby, Inc. ("Horizon"), a Delaware-based corporation. Align has no physical presence in the United States, but it contracts with U.S.-based distributors to sell its products to retailers who, in turn, sell them to consumers. At the time of the incident at issue here, Align sold its products throughout the United States through four U.S.-based distributors, including Horizon.
¶3 Boustred installed the main rotor holder to his helicopter and was injured in Colorado when the blades held by the main rotor holder released and struck him in the eye. He filed claims of strict liability and negligence against both Align and Horizon in Colorado.
¶4 Align filed a motion to dismiss Boustred's claims on the ground that Colorado lacked personal jurisdiction over it. The district court denied the motion, concluding that Boustred had made a prima facie showing of personal jurisdiction under Colorado's long-arm statute and the U.S. Constitution. In support of this determination, and resolving any controverted facts in favor of Boustred, the district court found that Boustred's "allegations and supporting documents show that Align injected a substantial number of products into the stream of commerce knowing that those products would reach Colorado" and that Align "took steps to market its products in the U.S. and Colorado." The district court also noted that Boustred's allegations were "supported by documents that purportedly show that Align provided marketing materials to its distributors, attended trade shows in the U.S. where Align actively marketed its products, and established channels through which consumers could receive assistance with their Align products." The district court further determined that jurisdiction over Align was reasonable both because Align would suffer no greater burden in defending this suit in Colorado than it would in any other U.S. forum and because Colorado has a substantial interest in protecting its residents from faulty products.
¶5 Align then asked the district court to certify the personal jurisdiction question for interlocutory appeal under C.A.R. 4.2, and the district court granted the motion. A division of the court of appeals accepted jurisdiction and affirmed the district court's ruling. Boustred v. Align Corp. Ltd., 2016 COA 67, ¶¶ 1-2, 410 P.3d 640. Align argued that the district court's ruling ignored J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011). However, the division determined that the plurality opinion of J. McIntyre was not binding on Colorado courts and that instead Justice Breyer's narrower concurrence controlled. See Boustred, ¶¶ 23-24. Interpreting that concurrence and the concurrence in Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), the division held that the U.S. Supreme Court's decision in World-Wide Volkswagen remains the prevailing law articulating the stream of *167 commerce doctrine. Boustred, ¶ 23. Applying that doctrine, the division agreed with the district court that Boustred had made a sufficient prima facie showing of Colorado's specific personal jurisdiction over Align. See id. at ¶¶ 24, 27.
¶6 Align appealed, and we granted certiorari.
II. Analysis
¶7 This case presents the first opportunity for this court to address the impact of two U.S. Supreme Court plurality opinions- Asahi and J. McIntyre-on Colorado's stream of commerce jurisprudence. We begin by reviewing the law of personal jurisdiction generally and its application in stream of commerce cases specifically. We consider the three primary U.S. Supreme Court cases exploring the stream of commerce doctrine- World-Wide Volkswagen, Asahi, and J. McIntyre-and conclude that World-Wide Volkswagen remains the controlling precedent. Next, we apply the stream of commerce doctrine to the case before us and conclude that Boustred made a sufficient showing under this doctrine to withstand a motion to dismiss.
A. Standard of Review
¶8 "Whether a court may exercise personal jurisdiction over a defendant is a question of law, which we review de novo." Griffith v. SSC Pueblo Belmont Operating Co. LLC, 2016 CO 60M, ¶ 9, 381 P.3d 308, 312, as modified on denial of reh'g (Oct. 17, 2016). Similarly, when a court addresses a motion to dismiss based solely on documentary evidence, we review de novo whether a plaintiff established a prima facie case of personal jurisdiction necessary to defeat a motion to dismiss. Archangel Diamond Corp. v. Lukoil, 123 P.3d 1187, 1192 (Colo. 2005). In doing so, we review the documentary evidence de novo. Id. at 1195.
B. Personal Jurisdiction
¶9 For a Colorado court to exercise jurisdiction over a non-resident defendant, the court must comply with Colorado's long-arm statute and constitutional due process. Id. at 1193. Colorado's long-arm statute confers "the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." Id. (citing Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 1267, 1270 (Colo. 2002) ); see also U.S. Const. amend. XIV ; Colo. Const. art. II, § 25 ; § 13-1-124, C.R.S. (2017). Therefore, we engage in a constitutional due process analysis to determine whether a Colorado court may exercise jurisdiction over a non-resident defendant. Magill v. Ford Motor Co., 2016 CO 57, ¶ 14, 379 P.3d 1033, 1037, reh'g denied (Oct. 3, 2016).
¶10 The due process clauses of the United States and Colorado constitutions operate to limit a state's exercise of personal jurisdiction over non-resident defendants. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ; Keefe, 40 P.3d at 1270. Specifically, due process requires that a non-resident corporate defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) ). "The quantity and nature of the minimum contacts required depends on whether the plaintiff alleges specific or general jurisdiction." Archangel, 123 P.3d at 1194. Here, because no party asserts that Align is subject to general jurisdiction, we discuss only specific jurisdiction.
¶11 "Specific jurisdiction is properly exercised where the injuries triggering litigation arise out of and are related to 'activities that are significant and purposefully directed by the defendant at residents of the forum.' " Id. (quoting Keefe, 40 P.3d at 1271 ). To determine whether the defendant has sufficient minimum contacts, we consider "(1) whether the defendant purposefully availed himself of the privilege of conducting business in the forum state, and (2), whether the litigation 'arises out of' the defendant's forum-related contacts." Id.
¶12 The "purposeful availment" requirement precludes personal jurisdiction *168 resulting from random, fortuitous, or attenuated contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The "arising out of" requirement mandates that "the actions of the defendant giving rise to the litigation must have created a 'substantial connection' with the forum state." Archangel, 123 P.3d at 1194 (quoting Keefe, 40 P.3d at 1271 ).
¶13 Once it is established that a defendant has the requisite minimum contacts, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' " Keefe, 40 P.3d at 1271 (quoting Burger King, 471 U.S. at 476, 105 S.Ct. 2174 ). These "fairness factors" include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and/or the shared interest of the several states in furthering fundamental substantive social policies. World-Wide Volkswagen, 444 U.S. at 292, 100 S.Ct. 559.
C. Personal Jurisdiction in Stream of Commerce Cases
¶14 The U.S. Supreme Court first addressed the minimum contacts analysis in the context of non-resident manufacturers in World-Wide Volkswagen. There, the Court held that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." 444 U.S. at 297-98, 100 S.Ct. 559. According to the Court, the stream of commerce referred to the formal or informal distribution networks that a manufacturer uses to "serve directly or indirectly, the market for its product in other States." Id. at 297, 100 S.Ct. 559. The Court further explained that if a sale of a product from a manufacturer:
[A]rises from the efforts of the manufacturer to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject [the manufacturer] to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.
Id.
¶15 But the mere possibility that a product might end up in a given state cannot constitute the purposeful availment necessary to support personal jurisdiction because " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." Id. at 295, 100 S.Ct. 559. Instead:
[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.
Id. at 297, 100 S.Ct. 559.
¶16 Since World-Wide Volkswagen, two decisions of the Court- Asahi and J. McIntyre-have addressed the stream of commerce doctrine. However, both were split decisions, and each provided internally competing analytical frameworks for determining the scope of the minimum contacts analysis in stream of commerce cases.
¶17 In Asahi, a Japanese parts manufacturer, Asahi Metal Industry Co., Ltd. ("Asahi"), sold a tire valve to a Japanese motorcycle manufacturer. 480 U.S. at 106, 107 S.Ct. 1026. The motorcycle manufacturer sold its motorcycles in the United States, where a purchaser suffered injuries after his rear tire exploded. Id. at 105-07, 107 S.Ct. 1026. The purchaser brought suit in California against the motorcycle manufacturer, who sought indemnification from Asahi. Id. It was disputed whether Asahi was aware that the vehicles with its valves were being sold in the United States. Id. at 107, 107 S.Ct. 1026. Asahi alleged that it did not have sufficient minimum contacts with California to sustain the state's assertion of personal jurisdiction. Id. at 106, 107 S.Ct. 1026.
¶18 The Asahi four-justice plurality, in an opinion penned by Justice O'Connor, noted *169 two approaches that courts had taken in applying World-Wide Volkswagen: (1) the stream of commerce test, which "allow[s] an exercise of personal jurisdiction to be based on no more than the defendant's act of placing the product in the stream of commerce" with "awareness that its [product] would be sold in" the state; and (2) the stream of commerce plus test, which "require[s] the action of the defendant to be more purposefully directed at the forum State than the mere act of placing a product in the stream of commerce." Id. at 110-11, 107 S.Ct. 1026 (plurality opinion).
¶19 The plurality endorsed the stream of commerce plus test: "The 'substantial connection[ ]' between the defendant and the forum State necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State." Id. at 112, 107 S.Ct. 1026 (emphasis omitted). Justice O'Connor went on to opine that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." Id. (citations omitted). Such purposefully directed conduct may take several forms, including "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id. According to the plurality, however, "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Id. Thus, the plurality concluded that California courts did not have jurisdiction to hear the case, even if Asahi knew that its products would end up in California, because Asahi did not have offices; advertise; "create, control, or employ" the distribution system for its products in California; or design its product in anticipation of sales in California. Id. at 112-13, 107 S.Ct. 1026.
¶20 Justice Brennan, joined by three other justices, concurred in the judgment but disagreed with adopting the stream of commerce plus test. Id. at 116, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment). Justice Brennan "s[aw] no need for" showing "additional conduct" directed toward the forum. Id. at 117, 107 S.Ct. 1026. Instead, he concluded that World-Wide Volkswagen's articulation of the stream of commerce doctrine should not be altered. Id. at 120-21, 107 S.Ct. 1026. According to Justice Brennan, "The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale." Id. at 117, 107 S.Ct. 1026. Further, "[a]s long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." Id. Justice Brennan explained that a defendant who places goods in the stream of commerce purposefully avails itself of a forum state because it "benefits economically from the retail sale of the final product ... and indirectly benefits from the [s]tate's laws that regulate and facilitate commercial activity."[2] Id.
¶21 The Court again addressed this issue in a split decision in J. McIntyre. There, the plaintiff was injured in New Jersey while using a metal-shearing machine that was manufactured in England by J. McIntyre Machinery Ltd. ("J. McIntyre"). 564 U.S. at 878, 131 S.Ct. 2780 (plurality opinion). A U.S.-based distributor sold J. McIntyre's machines in the United States. Id. J. McIntyre officials attended conventions with the distributor in the United States to advertise its machinery, albeit not in the forum state of New Jersey, and no more than four of J. McIntyre's machines ended up in New Jersey. Id. However, J. McIntyre held patents on the technology in both the United States *170 and Europe, and the distributor advertised in accordance with J. McIntyre's guidance when possible. Id. at 879, 131 S.Ct. 2780. The plaintiff filed a products-liability suit in New Jersey, and J. McIntyre sought to dismiss the suit for want of personal jurisdiction. Id. at 878, 131 S.Ct. 2780.
¶22 In a four-justice plurality, Justice Kennedy endorsed the stream of commerce plus test for products-liability cases and sought to clarify the "imprecision arising from Asahi." Id. at 881, 131 S.Ct. 2780. Specifically, Justice Kennedy wrote that the principal inquiry "is whether the defendant's activities manifest an intention to submit to the power of a sovereign. In other words, the defendant must 'purposefully avai[l] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " Id. at 882, 131 S.Ct. 2780 (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ) (alterations in original). The plurality then concluded that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." Id. Applying this rule to the facts of the case, the plurality determined that because the plaintiff had not established "conduct purposefully directed at New Jersey," New Jersey courts did not have jurisdiction over J. McIntyre. Id. at 886, 131 S.Ct. 2780. Instead the plurality concluded that although the "facts may reveal an intent to serve the U.S. market ... they do not show that J. McIntyre purposefully availed itself of the New Jersey market." Id.
¶23 Justice Breyer, joined by Justice Alito, concurred in the judgment but declined to adopt the plurality's stream of commerce plus test. Id. at 887-88, 131 S.Ct. 2780 (Breyer, J., concurring in the judgment). Instead, Justice Breyer concluded that although commercial circumstances may have changed since Asahi, such changes were not at issue in the case, meaning the case was "an unsuitable vehicle for making broad pronouncements that refashion basic jurisdictional rules." Id. at 890, 131 S.Ct. 2780. Instead, the outcome of the case "require[d] no more than adhering to [the Supreme Court's] precedents." Id. And under such precedents, a single isolated sale was an insufficient basis for asserting jurisdiction. Id. In other words, as a panel on the Federal Circuit explained, the crux of Justice Breyer's concurrence is that "the Supreme Court's framework applying the stream-of-commerce theory-including the conflicting articulations of that theory in Asahi-had not changed" and the "law remains the same after [J.] McIntyre." AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed. Cir. 2012).
¶24 This court has not yet examined the impact of Asahi and J. McIntyre on Colorado's stream of commerce jurisprudence for the purposes of establishing specific jurisdiction. Both cases were plurality opinions providing no clear holding. When the U.S. Supreme Court issues such an opinion, the holding "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting Gregg v. Georgia, 428 U.S. 153, 169 n.15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) ). Therefore, we must evaluate which analysis reached its conclusion on the narrowest grounds in both Asahi and J. McIntyre.
¶25 Turning first to Asahi, Justice O'Connor's plurality opinion altered World-Wide Volkswagen's stream of commerce test when it embraced the stream of commerce plus test, which added the requirement that a plaintiff must prove additional conduct of a defendant beyond placing a product into the stream of commerce in order to establish sufficient minimum contacts with the forum state. See Asahi, 480 U.S. at 112, 107 S.Ct. 1026 (plurality opinion). Justice Brennan's concurrence, however, relied on World-Wide Volkswagen's prior stream of commerce test and rejected the additional requirement of Justice O'Connor's plurality opinion. Id. at 120-21, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment). Thus, because Justice Brennan's concurrence did not alter the existing jurisdictional framework, it represents the narrowest grounds for the judgment.
*171 ¶26 Next, turning to J. McIntyre, Justice Kennedy's plurality opinion adopted the stream of commerce plus test first articulated by Justice O'Connor in Asahi. 564 U.S. at 879, 131 S.Ct. 2780 (plurality opinion). As discussed above, this test deviated from World-Wide Volkswagen. Justice Breyer's concurrence, on the other hand, rejected this test and explicitly based its conclusion only on existing U.S. Supreme Court precedent. Id. at 890, 131 S.Ct. 2780 (Breyer, J., concurring in the judgment). Thus, similar to Justice Brennan's concurrence in Asahi, it did not depart from the Supreme Court's jurisdictional framework and represents the narrowest grounds for the judgment.
¶27 Thus, in determining the contours of Colorado's stream of commerce jurisprudence for the purposes of establishing specific jurisdiction, we are bound by the Court's majority opinion in World-Wide Volkswagen, the reasoning in Justice Brennan's concurrence in Asahi, and the reasoning in Justice Breyer's concurrence in J. McIntyre. As noted above, World-Wide Volkswagen clarifies that the requisite minimum contacts may be established by showing that the defendant placed goods into the stream of commerce with the expectation that the goods will be purchased in the forum state. 444 U.S. at 297-98, 100 S.Ct. 559. Both Justice Brennan's concurrence in Asahi and Justice Breyer's concurrence in J. McIntyre followed and did not alter this approach. Therefore, in stream of commerce cases, World-Wide Volkswagen and its stream of commerce test continues to bind this court in determining whether a non-resident defendant has sufficient minimum contacts with Colorado for a court to assert personal jurisdiction.[3]
¶28 Having determined the proper test for specific personal jurisdiction over a non-resident defendant in stream of commerce cases, we now turn to this case and consider whether the district court properly denied Align's motion to dismiss.
D. Personal Jurisdiction over Align
¶29 Align is appealing the district court's denial of its motion to dismiss for lack of jurisdiction. Because the district court considered only documentary evidence when ruling on the motion to dismiss, Boustred only had to make a prima facie showing of personal jurisdiction to defeat the motion. Goettman v. N. Fork Valley Rest., 176 P.3d 60, 66 (Colo. 2007). A division of the court of appeals affirmed the district court's ruling that Boustred made a sufficient prima facie showing of Colorado's personal specific jurisdiction over Align. Boustred, ¶ 27. We agree.
¶30 A plaintiff makes a prima facie showing when he or she raises a reasonable inference, whether in the complaint or in other documentary evidence, that the court has jurisdiction over the defendant. Goettman, 176 P.3d at 66. "Documentary evidence consists of the allegations in the complaint, as well as affidavits and any other evidence submitted by the parties." Id."[T]he allegations in the complaint must be accepted as true to the extent that they are not contradicted by the defendant's competent evidence, and where the parties' competent evidence presents conflicting facts, these discrepancies must be resolved in the plaintiff's favor." Archangel, 123 P.3d at 1192. Thus, where a plaintiff has alleged sufficient facts to support a reasonable inference that a defendant engaged in conduct meeting the threshold personal jurisdiction standard, the plaintiff has made a sufficient showing to withstand a motion to dismiss. See World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. 559 ; Goettman, 176 P.3d at 66.
¶31 To make a prima facie showing under World-Wide Volkswagen, a plaintiff *172 must allege sufficient facts to support a reasonable inference that a defendant placed goods into the stream of commerce with the expectation that the products will be purchased in the forum state. Here, the documentary evidence establishes that Boustred made such a showing.
¶32 In his complaint and supporting documentary evidence (obtained through limited discovery), Boustred alleged the following:
• Boustred is a resident of Colorado;
• He was injured in Colorado when the blades of his helicopter held by the main rotor holder released and struck him in the eye;
• Align manufactured the subject radio-controlled helicopter and subject allegedly defective main rotor holder in Taiwan where the company is based;
• Align sells its products via an international distributorship network that includes four distributors in the United States, one of which is Horizon;
• The rotor holder at issue here was distributed by Horizon and purchased in Colorado;
• Horizon has sold over $350,000 worth of Align products in Colorado;
• Align placed no limitations on where Horizon could distribute products in the United States;
• Align's products are sold throughout the United States, including Colorado;
• All four distributors have distributed Align's products in Colorado;
• All four distributors are promoted and advertised by Align, and in particular on Align's website;
• Align provided marketing materials to all of its U.S. distributors;
• Align attended trade shows in the United States where it actively marketed its products; and
• Align established channels through which consumers could receive assistance with their Align products.[4]
¶33 This documentary evidence reasonably supports an inference that the presence of the allegedly defective main rotor holder in Colorado did not result from "random, fortuitous, or attenuated" contacts with Colorado and instead was placed into the stream of commerce with the expectation that the products will be purchased in Colorado. See World-Wide Volkswagen, 444 U.S. at 297-98, 100 S.Ct. 559 ; Archangel, 123 P.3d at 1197. Specifically, Align placed its products into the stream of commerce by using its four distributors. Through its distributors, Align's products were distributed and sold across the United States, including Colorado, and Align placed no limitation on where Horizon could distribute. And specifically, over $350,000 worth of Align products were sold in Colorado. Given this, Align should have reasonably anticipated being haled into court in Colorado. See World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559. Therefore, under World-Wide Volkswagen, Boustred has made a sufficient showing that Align had sufficient minimum contacts with Colorado. Additionally, because Boustred's injuries arose out of Align's contacts with Colorado, Boustred established a prima facie showing of specific jurisdiction over Align.[5]
¶34 We reject Align's argument that selling its products through a distributor somehow turns the distribution and sale of its products into the unilateral activity of a third party that cannot properly be considered in the minimum contacts analysis. Adopting such a position would render foreign manufacturers immune from suit in the United *173 States so long as they sell their products in the United States through separately incorporated U.S.-based distributors. Such a result would be inequitable, as it would allow foreign manufacturers to receive the substantial economic benefit from sales to the U.S. market without incurring resulting liabilities and costs. Other courts have come to the same conclusion. See, e.g., Cunningham v. Subaru of Am., Inc., 631 F. Supp. 132, 136 (D. Kan. 1986) ("While Fuji greatly profits from the sale of the Subaru Brat vehicles in the United States, it claims that it is immune from all jurisdictional claims against it in the United States. The Court views this as a company which seeks to reap all of the benefits without incurring the resulting liabilities and costs."); Book v. Doublestar Dongfeng Tyre Co., 860 N.W.2d 576, 596 (Iowa 2015) (finding jurisdiction proper over a Chinese manufacturer that sold thousands of tires in Iowa through a distributor, and noting that the foreign defendant "at least indirectly served the [state's] market through [its distributor] 'with the expectation that [its tires] would be purchased by consumers in the forum State' " (quoting World-Wide Volkswagen, 444 U.S. at 298, 100 S.Ct. 559 ) (alterations in original) ).
¶35 Moreover, we conclude that the assertion of personal jurisdiction over Align would be reasonable such that it would not violate "traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S at 316, 66 S.Ct. 154 (quoting Milliken, 311 U.S. at 463, 61 S.Ct. 339 ). As noted above, under World-Wide Volkswagen, a state court's exercise of personal jurisdiction over a non-resident defendant is reasonable if the burden on the defendant is outweighed by the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and/or the shared interest of the several states in furthering fundamental substantive social policies. 444 U.S. at 292, 100 S.Ct. 559 ; see also Burger King, 471 U.S. at 476-77, 105 S.Ct. 2174. Any burden on Align is simply the burden on any foreign manufacturer under similar circumstances. While this burden is real, it is precisely the type of burden reasonably imposed upon a defendant who has purposefully availed itself of the privileges of doing business in this state. Additionally, as a foreign defendant whose product is alleged to have injured a U.S. citizen, Align will suffer no greater burden in defending this suit in Colorado than it would in any other State. Moreover, Colorado has a clear interest in protecting its residents from defective products, and Boustred, a Colorado resident, has a great interest in obtaining effective relief in a Colorado court. Therefore, an assertion of personal jurisdiction over Align is reasonable.
III. Conclusion
¶36 For the foregoing reasons, we affirm the judgment of the division of the court of appeals.

We granted certiorari to review the following issue:
Whether the court of appeals erred in finding that petitioner's national marketing, distribution, and other activities are sufficient "minimum contacts" to exercise specific jurisdiction in Colorado under World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) and J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011).

Ultimately, Justice Brennan concluded that while there were sufficient minimum contacts to support jurisdiction, an exercise of personal jurisdiction in the case before him "would not comport with 'fair play and substantial justice.' " Asahi, 480 U.S. at 116, 107 S.Ct. 1026 (Brennan, J., concurring in part and concurring in the judgment) (citing Int'l Shoe, 326 U.S. at 320, 66 S.Ct. 154 ).

The U.S. Supreme Court's recent decision in Bristol-Myers Squibb Co. v. Superior Court, --- U.S. ----, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), does not change our analysis. There, the Court held that the non-resident plaintiffs failed to establish personal jurisdiction over the defendant in California, even though the defendant clearly did business in California, because there was no connection between the plaintiffs' claims and the defendant's contacts in California. Id. at 1781. Specifically, the non-resident plaintiffs did not buy the product at issue in California, nor were they injured by the product in the state. Id. at 1778. In this case, in contrast, the plaintiff lives in Colorado, bought the product in Colorado, and was injured in Colorado. Hence, the issue implicated in Bristol-Myers Squibb is not implicated here.

Align submitted affidavits and other materials to counter Boustred's allegations, but we resolve controverted facts in favor of the plaintiff for the purposes of a motion to dismiss. Archangel, 123 P.3d at 1197.

We note, however, that this showing only allows Boustred to survive Align's motion to dismiss. As the case proceeds, Boustred may have to meet a higher burden to definitively establish that Colorado may exercise jurisdiction over Align. See Goettman, 176 P.3d at 66 n.3 ("Although a prima facie showing of personal jurisdiction [over a non-resident defendant] is sufficient to overcome a motion to dismiss for lack of jurisdiction when the court rules on the motion on documentary evidence alone, the plaintiff must establish personal jurisdiction by a preponderance of the evidence if the defendant raises the challenge again prior to the close of trial.").